IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VIRGILIO CARVAJAL,<br><br>        Plaintiff,<br>  v.<br><br>CAL FARMS, INC.,<br><br>        Defendant. | Case No.: 3:22-cv-00678-AN<br><br><br>OPINION AND ORDER |

Plaintiff Virgilio Carvajal brings this action against defendant Cal Farms, Inc. for violation of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*, deprivation of equal right to make and enforce contracts in violation of 42 U.S.C. § 1981, and breach of contract. Plaintiff filed this Motion for Partial Summary Judgment, ECF [18], pursuant to Federal Rule of Civil Procedure 56(a), on his first two claims—violation of AWPA and breach of contract. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, Plaintiff's motion is DENIED.

**LEGAL STANDARD**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Anticipating that there would be a shortage of domestic workers available for its 2019 harvest season, defendant sought and obtained approval for two work contracts, also known as job orders, under the H-2A program. Decl. of Lauren J. Russell in Supp. of Def.'s Opp. in Resp. to Pl.'s Mot. for Partial Summ. J. ("Russell Decl."), ECF [20], Ex. 1, at 14:25-17:14; *id.*, Ex. 11, at 69:24-70:9. The H-2A program assists employers who anticipate a lack of available domestic workers with bringing foreign workers to the U.S. to perform temporary or seasonal agricultural work. 8 U.S.C. § 1188.

One contract, identified by Job Order Number 2264013, applied to work site areas in Clackamas and Jefferson counties. Russell Decl., Ex. 22. Under that contract, defendant requested sixty workers for an "anticipated period of employment" from March 1, 2019 to December 15, 2019. *Id.* The second contract, identified by Job Order Number 2268829, applied to work site areas in Jefferson County only. *Id.*, Ex. 23. Under that contract, defendant requested forty workers for the same anticipated period of employment. *Id.*

In March of 2019, the Oregon Employment Department ("OED") referred plaintiff for row crop harvesting work under Job Order Number 22668829, which lists Jefferson County as the worksite. *Id.*, Ex. 14. The job order recommended that applicants apply in person in Oregon City or Madras (used interchangeably with Jefferson County). *Id.* In March 2019, plaintiff went in person to defendant's Madras office location to apply for work, where he was instructed to call the main office in Oregon City and speak with Marissa Hokenson (also known as Marissa Calcagno) ("Hokenson"). *Id.*, Ex. 6, at 24:24-25:6. After a subsequent exchange of emails[1] between Defendant's office staff and OED, on April 1, 2019, OED provided defendant with plaintiff's home phone number so that defendant could interview him by phone.

---

[1] Generally, OED expressed confusion around how domestic workers should apply to Cal Farms. Hokenson instructed OED to tell defendant and other applicants to call the main office in Oregon City. *See* Pl.'s Mot. for Partial Summ. J.

2

On April 4, 2019, Hokenson and a coworker interviewed plaintiff. During that interview, plaintiff volunteered that he had worked for defendant previously. Hokenson checked defendant's internal employee records and discovered plaintiff had worked ten days in June 2008 before quitting during the busiest time of the season and with five months remaining in season. *Id.*, Ex. 3; *id.*, Ex. 11, at 54:11-59:23. Based on this information and defendant's "no complete, no rehire" policy[2], Hokenson determined plaintiff was ineligible for rehire. *Id.*, Ex. 3; *id.*, Ex. 11, at 65:4-67:18; *id.*, Ex. 19, at 18:12-19:4. The next day, April 5, 2019, Hokenson attempted to call plaintiff to inform him that he was not eligible for rehire, but no one answered, and they were unable to leave a message. *Id.*, Ex. 11, at 65:4-17; *id.,* Ex. 19, at 70:15-72:17. That same day, Hokenson informed OED of the outcome of plaintiff's interview via email. *Id.*, Ex. 24, at 1-2.

On April 10, 2019, Fernando Gutierrez, OED's State Monitor Advocate for the Migrant Seasonal Farmworker Program, emailed Hokenson regarding plaintiff's referral and recommended that defendant conduct another interview of plaintiff "in the spirit of working together" and to avoid "initiation of a complaint" for failure to hire a domestic referral. *Id.*, Ex. 20, at 4-5. Hokenson agreed to move forward in the hiring process with plaintiff "in good faith." *Id.*, Ex. 11, at 117:23-118:15; *id.,* Ex. 20, at 3-4. On April 12, 2019, Hokenson called plaintiff regarding defendant's employee orientation occurring at 7 a.m. the next day at the Madras location. *See* Pl.'s Mot., Ex. F, ¶ 9. Plaintiff accepted defendant's offer of employment and confirmed he received a copy of the applicable contract. Russell Decl., Ex. 20, at 2-3.

On April 13, 2019, plaintiff attended orientation at defendant's Madras location. *Id.*, Ex. 6, at 67:2-68:4. At this time, Madras had been unseasonably cold and wet, meaning no row crop harvesting work was available. *Id.*, Ex. 11, at 76:3-78:10, 80:13-81:19; *id.*, Ex. 18, at 2; *id.,* Ex. 19, at 23:8-25; *id.*, Ex. 20. While some H-2A foreign workers had arrived in Madras prior to April 13th, the poor weather

---

("Pl.'s Mot."), ECF [18], Ex. A, at 2.

[2] In relevant part, defendant's policy provides: "*If the worker abandons their employment without notice during the period covered by this work agreement they are terminated immediately and will be disqualified from future employment opportunities with the employer.*" Russell Decl., Ex. 23, at 15-16 (emphasis in original).

prevented them from working, and workers either waited in defendant's provided housing or spent time with their Oregon families offsite until the weather improved. *Id.*, Ex. 20, at 1. Because of the weather, Hokenson told plaintiff she would call him with a start date. *Id.*, Ex. 11, at 111:1-112:7; *id.*, Ex. 18, at 2.

On April 19, 2019, Hokenson called plaintiff to let him know his start date would be April 22, 2019, at 7 a.m. *Id.* However, plaintiff failed to call or show up. *Id.* On April 24, 2019, Hokenson called plaintiff, and a woman answered the phone. *Id.*, Ex. 11, at 115:3-116:17; Ex. 18, at 2. Hokenson told the woman that plaintiff needed to come to work. *Id.* Still, plaintiff failed to call or show up for work. *Id.,* Ex. 11, at 119:21-120:10; Ex. 18, at 2. On April 29, Hokenson mailed plaintiff a letter informing him that his final paycheck (representing his time spent at orientation) was ready and seeking instructions on how to deliver the check to plaintiff. *Id.*, Ex. 11, at 115:3-120:10; *id.*, Ex. 25.

On June 3, 2020, OED again referred plaintiff to defendant for work. *Id.*, Ex. 15. Hokenson determined plaintiff was ineligible for rehire under defendant's no complete, no rehire policy and informed OED of the same. *See id.*, Ex. 11, at 118:16-119:16, *id.*, Ex. 24, at 3. On or about June 9, 2020, plaintiff and his daughter called defendant regarding the job referral, and Hokenson informed him that he was ineligible to be rehired because he did not come to work for five days in a row. *Id.*, Ex. 29.

## DISCUSSION

**A.     AWPA**

Plaintiff asserts that summary judgment is appropriate as to his AWPA claim because defendant violated the working arrangement by: (1) initially refusing to hire plaintiff; (2) failing to offer plaintiff immediate work and wages; and (3) refusing to rehire plaintiff in 2019.

AWPA provides, in relevant part, for protections for seasonal agricultural workers, like plaintiff, and migrant agricultural workers. 29 U.S.C. § 1831. Under Section 1832(c), an agricultural employer cannot, without justification, "violate the terms of any working arrangement" made by that employer with any seasonal worker. 29 U.S.C. § 1832(c). There is no precise definition of "working arrangement" set forth in the statutes. The regulations promulgated by the U.S. Department of Labor ("DOL"), however, provide that an employer's failure to comply with a working arrangement is justified

4

due to acts of God or to "conditions beyond the control of the person or to conditions which he could not reasonably foresee." The regulation also states that "[w]ritten agreements do not relieve any person of any responsibility that the person would otherwise have under the Act or these regulations." 29 C.F.R. § 500.72(a), (b). Thus, an employer cannot escape liability through a specific writing contrary to the responsibilities levied upon it by the Act. Nor, however, will it be held responsible for violations which arise under unforeseen circumstances. The working arrangement, then, is the understanding of the parties, given their mutual knowledge and conduct, as to the expected terms and conditions of employment.

Federal employment-related laws, including H-2A program requirements, are mandatory terms of the working arrangement between an agricultural employer and an agricultural worker. *See Hernandez v. Siri and Son Farms, Inc.*, No. 6:20-cv-00669-MK, 2021 WL 4999022, at *5 (D. Or. Sep. 30, 2021), *report and recommendation adopted*, 2021 WL 4993475 (D. Or. Oct. 27, 2021) (finding that H-2A program requirements are mandatory terms of the working arrangement); *Elizondo v. Podgorniak*, 100 F. Supp. 2d 459, 463 (E.D. Mich. 2000) (determining that working arrangement "includes those aspects of a working relationship that are required by law"); *De La Cruz v. Gill Corn Farms, Inc.*, No. 03-cv-1133, 2005 WL 5419057, at *7 (N.D.N.Y. Apr. 13, 2005) ("For purposes of the pending motion for summary judgment, the Court will assume that federal and state employment related laws are part of the working arrangement between Plaintiffs and Defendants.").

The H-2A program[3] permits U.S. employers anticipating a shortage of available U.S. workers needed for agricultural jobs to the DOL for certification to hire non-immigrant foreign workers to perform the jobs on a temporary basis. *See* 8 U.S.C. § 1188. The program requires participating employers to keep any H-2A job opportunity "open to any qualified U.S. worker" and requires that "[r]ejections of any U.S. workers who applied or apply for the job must be only for lawful, job-related reasons, and those not rejected on this basis have been or will be hired." 20 C.F.R. § 655.135(a). Additionally, the employer must contact its former U.S. workers "employed by the employer in the occupation at the place of employment

---

[3] It is undisputed that defendant, since approximately 2009, has participated in the federal H-2A program. Russell Decl., Ex. 1, at 14:25-17:14; *id.*, Ex. 11, at 69:24-70:9.

during the previous year and solicit their return to the job." 20 C.F.R. § 655.153. Further, under the fifty percent rule, "the employer must provide employment to any qualified, eligible U.S. worker who applies to the employer" from the moment foreign workers depart for the employer's place of employment until fifty percent of the work period has elapsed. 20 C.F.R. § 135(d).

    1.    *Initial Refusal*

First, plaintiff argues that defendant initially refused to hire plaintiff, a U.S. worker, during the fifty percent period, in violation of the working arrangement. Plaintiff relies on the following facts: (1) defendant made it difficult for plaintiff to apply by asserting applicants were "strongly encouraged" to apply "in person" in Madras (Jefferson County) but failed to staff that location so applicants could apply there as instructed; and (2) defendant denied employment to plaintiff.

However, defendant argues that it had a legitimate reason to refuse plaintiff, and its initial rejection was not for purposes of delay or discrimination. Defendant claims plaintiff was ineligible for rehire in 2019 because plaintiff abandoned a previous job with defendant in 2008. Evidence presented by defendant shows that a genuine issue of fact remains as to whether defendant had a justified, lawful job-related reason to initially deny plaintiff employment. *See* Russell Decl., Ex. 3; *id.*, Ex. 11, at 54:11-59:23; Ex. 24, at 2.

Second, in direct response to defendant's contention that plaintiff was "ineligible" for employment in 2019 because of job abandonment in 2008, plaintiff argues that defendant made "no contention" as to whether plaintiff was qualified in 2019, and it made no assertion as to whether he was eligible in 2019. Pl.'s Reply to Def.'s Opp. to Mot. for Partial Summ. J. ("Pl.'s Reply"), ECF [25], at 7. Plaintiff points to defendant's response to its interrogatory:

> **Interrogatory No. 16**: To the extent that you contend that Plaintiff was not a qualified domestic worker, state every reason you believe he was not qualified for the positions for which he applied.
> **Response**: Defendant makes no contention regarding Plaintiff's qualifications as a domestic work. Plaintiff was ineligible for rehire with Defendant in 2020 because he abandoned his job with Defendant in 2019.

Pl.'s Mot., Ex. C, 25. Because defendant failed to state its position as to whether plaintiff was qualified,

6

plaintiff claims defendant asserted only in its Response to plaintiff's Motion, and not prior, that plaintiff was ineligible for rehire in 2019. In turn, plaintiff requests that the Court not consider "defendant's contentions regarding plaintiff's qualifications or 'eligibility' in 2019 at this late stage." Pl.'s Reply 7.

Plaintiff conflates "eligible" with "qualified." Defendant's position, which is clearly established, remains that defendant did not rehire plaintiff initially in 2019, or again in 2020, because he was ineligible due to job abandonment in 2008, and job abandonment in 2019. Defendant clearly states this position in its response to interrogatory No. 16. Said differently, defendant's position is that it denied plaintiff for a lawful, job-related reason, not because plaintiff was unqualified to perform harvesting work. Consequently, issues of fact remain as to whether plaintiff's job abandonment was a lawful, job-related reason supporting denial. Accordingly, plaintiff's motion for summary judgment is DENIED on this count.

    2.    *Immediate Work and Wages*

Next, plaintiff argues that as of April 13, 2019, the date of plaintiff's orientation with defendant, "H-2A workers that had been hired to do the same work that [plaintiff] applied to do [sic] had already been working for several days." Pl.'s Mot. 5. However, defendant maintains that those workers were working under a different work order than plaintiff, and therefore defendant was not obligated to offer available work in Clackamas County to plaintiff, because he did not apply for work under a contract that included work site areas in Clackamas County. Def.'s Resp. in Opp. to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp."), ECF [19], at 17.

The evidence proffered by defendant shows that there were two 2019 job orders. *See* Russell Decl., Ex. 22; *id.*, Ex. 23. Plaintiff applied to and was contracted under Job Order No. 22688, which expressly states that it applied to "work site areas located in Jefferson County, Oregon, USA." *Id.*, Ex. 23. Job Order No. 2264013, on the other hand, expressly states that it applied to "work site areas located in Clackamas County, Oregon, USA, and Jefferson County, Oregon, USA." *Id.*, Ex. 22.

The record, however, is unclear as to whether the specific H-2A workers plaintiff points to were under the same 2019 job order. Plaintiff offers the following testimony from Hokenson's deposition:

7

> "Q: And so when you say "co-mingled," you mean you have a worker who's hired under the Madras contract who goes and works under some other contract. Is that what you're saying?
> A. Yes.
> Q: And is this group of 17 [H-2A] workers that you referred to earlier that were hired under the 2019 contract to perform work in Madras?
> A: Yes.
> Q: All right. So if Mr. Carvajal had worked in the field, these workers listed in Exhibit 31 would have been his co-workers; is that right?
> A: Yes."

Pl.'s Mot., Ex. B, at 88:24-91:12. In response, defendant offers the following testimony from the same deposition:

> "Q: Well, to your knowledge, today, is it correct that no H-2A workers had worked for Cal Farms as of April 12th, 2019?
> A: There was work available in Oregon City, and a few H-2A workers worked in Oregon City.
> Q: … [W]hen you wrote this email to the State monitor advocate, that, to your knowledge, no H-2A workers had worked at that time, what did you know about what the H-2A workers had done when you wrote that?
> A: I knew that the H-2A workers in Madras were sitting in houses that the ground couldn't be worked, and we didn't have work except for my two-year round employees.
> Q: And you knew that there was work in Oregon City when you wrote that; is that correct?
> A: Yes. We had H-2A workers also on another contract working in Oregon City at that time.
> Q: You knew that at the time that you wrote this; is that correct?
> A: I did. There were two contracts going on at the same time…
> Q: … As of April 12th, 2019, you knew that H-2A workers were working under the Oregon City contract; is that correct?
> A: Yes. We had work for some of the H-2A workers in Oregon City at that time.
> Q: And then did you know if the workers who were working in Oregon City were hired under the Oregon City contract or if they were hired under the Madras contract when you wrote this?
> A: I didn't know. Any of the Madras people were new, so I was truthful in this email on how it was written and where it was coming from…"

Russell Decl., Ex. 19, at 78:12-80:6.

Hokenson's testimony is conflicting, and on that alone, a genuine issue of material fact exists which, in turn, precludes summary judgment. However, even if plaintiff can affirmatively prove that the H-2A workers were under the same job order, there remains issues of fact as to whether plaintiff was entitled to work in Clackamas County, or whether defendant affirmatively and discriminatorily precluded plaintiff from working in Clackamas County. The job order under which plaintiff applied for, and defendant offered employment, only included work in Jefferson County. *See* Russell Decl., *id.*, Ex. 22, at 1. Plaintiff

entered into and agreed to a contractual right to work in Jefferson County, not Clackamas County. Whether there was some mutual understanding that plaintiff would work in other counties is an open question that precludes the determination of whether plaintiff had a contractual right to that work.

The record is clear, however, that from April 13, 2019, the date of plaintiff's orientation, to April 22, 2019, plaintiff's offered start date, there was no harvesting work available in Jefferson County because of the unseasonably cold and wet weather. Russell Decl., Ex. 11, at 76:3-78:10, 80:13-81:19; *id.*, Ex. 18, at 2; *id.*, Ex. 19, at 23:8-25. In Jefferson County, no H-2A foreign workers were given work before plaintiff because of the weather.

Additionally, plaintiff's evidence referencing another worker, who was working in Jefferson County during that period does not entitle plaintiff to summary judgment. Decl. of Marissa Hokenson in Supp. of Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., ECF [21], ¶ 2. That worker is a supervisor, not a foreign or domestic H-2A worker subject to the rules and regulations of the H-2A program. *Id.* Further, the worker did not perform the job duties of a row crop harvester described in the 2019 job order to which plaintiff applied. Thus, plaintiff cannot establish a violation of the working arrangement based on this evidence.

Finally, there remains a genuine issue of material fact as to whether defendant offered better wages and working conditions to H-2A workers. Plaintiff failed to present evidence that H-2A workers were offered better wages. Instead, plaintiff relies on the fact that H-2A workers began working the day after orientation. As discussed above, this fact is contested. Further, whether defendant provided those workers better housing, transportation, or work depends on what contract those workers were under, and, again, what rights plaintiff was entitled to. Plaintiff cannot just rely on the fact that those workers were transferred from Jefferson County, worked in Clackamas, County, and/or lived in Clackamas, County. Accordingly, plaintiff cannot establish AWPA liability under these facts, and summary judgment is DENIED on this count.

3.   *Refusal to Rehire in 2020*

Finally, plaintiff argues that, in 2020, defendant violated the working arrangement under AWPA by refusing to rehire plaintiff. Defendant, however, argues that it had no obligation to offer plaintiff work in 2020 because plaintiff abandoned the job in 2019. Def.'s Resp. 22. In turn, defendant determined plaintiff was ineligible for rehire in 2020 under defendant's "no complete, no rehire" policy. *Id.*

Here, defendant, at the very least, established a genuine issue of material fact as to whether it had a lawful, job-related reason for not rehiring plaintiff in 2020. Defendant proffers evidence that plaintiff failed to come to work and was a no call, no show, for five days in a row in 2019. Russell Decl., Ex. 11, at 119:21-120:10; *id.*, Ex. 18, at 3. Plaintiff has failed to dispute this evidence.

Accordingly, viewing the facts and inferences to be drawn from them in the light most favorable to defendant, the Court DENIES plaintiff's motion on this count.

**B.      Breach of Contract**

Plaintiff can only establish breach of contract if he could establish a violation under AWPA, as both the violation and breach would flow from the working arrangement. As discussed above, at this time, plaintiff has failed to do that. Thus, summary judgment is similarly DENIED.

## CONCLUSION

Accordingly, plaintiff's Motion for Partial Summary Judgment, ECF [18], is DENIED.

IT IS SO ORDERED.

DATED this 7th day of December, 2023.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge